We just have two people here and a few spectators, so good morning to everybody who's here. We have, the panel has three cases before it this morning, two of which are being submitted on the briefs without oral argument. I will just note those two cases for the record. The first one is number 2008-3287, Bonk v. the Merit Systems Protection Board, and the second one is number 2008-7141, Winsett v. the Department of Veterans Affairs. Again, those two cases are being submitted without oral argument. The one case in which we'll hear oral argument this morning is number 2008-3133, Cartledge v. Office of Personnel Management. Mr. Schwartz, and I just want to confirm, you've reserved five minutes for your rebuttal? That's correct, Your Honor. Okay, well you can start whenever you're ready. Thank you. Good morning, police and court. My name, as Jay Shah pointed out, is Frederick Schwartz, and I'm here on behalf of Tom Cartledge. This is a particularly interesting appeal because on the agency side, it involves legal fictions of almost a metaphysical nature. Things were done non-pro-tank, they were done retroactively, they were done posthumously. But in terms of the other branches of the government, the court, the holdings of the court and the case law are absolutely clear. The holding of the cases are that there cannot be double recovery. Is there any argument in this case or any dispute over whether or not there was actual pay received by Mrs. Cartledge during the two-year period in question? Absolutely no argument at all, Judge Morris. No dispute. Everyone agrees that she did not get paid during that time. Didn't get paid a salary. I understand the annuity, that's a different question. That's correct. The government suggested that she might be entitled to a salary for these two years, but as I pointed out in my reply brief, that would be really nice, but unfortunately no. She received no salary. All she received during this two-year period was the annuity, which OPM now suggests is in fact an overpayment. On appendix 44, there are two entries in that document, appendix page 44. I think he's at the IRR. The IRR document. Right. There are two entries. One says the last day in pay status was 1-2-99. This is a grievance settlement agreement. Then right below that it said last day in pay status 0-2-28-01. Is that a discrepancy? What is the meaning of those two dates? Well, this is a revised form and the 2-2-8-01 is actually the date which is somewhat prior to the settlement where she was put on the rolls and then taken back off the rolls again. Is that the metaphysical context you were talking about? It's part of it. If you try to winnow your way through the facts because of the way that they did it, it's not entirely clear, but I do know that she had to pay from the time that she first retired until February 28, 2001. She had to repay, I believe it was $269 a month. That was a contribution that she would have made for the surviving spouse benefit. That was the reduction in her annuity. She had an annuity from the time that she actually retired on January 3, 1999. From that period until February 28, 2001, she was receiving a full annuity without a survivorship benefit. Because she was allowed to add a survivorship benefit. She elected that afterwards as part of the settlement agreement. Right. Then the amount that she had received was reduced by $269 per month. Because they're effectively making it retroactive. Right. That represented the survivor benefit cost. That reduction was the survivor benefit cost. Is that correct? Right. Basically, the way the annuity system works is you can get an annuity, but if you care about your spouse and you expect that you might die before your spouse, then you get a survivorship benefit. What that means is that you get less money in your annuity as long as you're alive, and then when you die, your spouse gets 55% of your annuity. Actuarially, it all works out to be the same, but in order to make sure that the government lost nothing in this transaction, she was required to pay back the difference between what she received and what she would have received if she had initially had a survivorship benefit. That technically represented the survivor benefit cost to her, the offset. That's exactly right. It basically makes it retroactive. It makes it as though she had elected the survivor benefit back in 1999 and was therefore getting the annuity that would have equated to that election. That's right, Judge Moore. That's why when we get further down, when we have to consider whether it was equitable or not, she performed in every way which was equitable. Are you now twitching to the waiver argument? Not quite yet. Not yet? OK. I wasn't sure where you were going. OK. So basically, in terms of what happened, issues arise because of the fact that it's a bunch of legal fictions. But when you get to the cases, cases are very clear. You can't get a double recovery. You can't get a windfall, and that makes sense. You can't, because you're an annuitant, have an advantage and get two income streams. But this didn't happen in this case. As you pointed out, Judge Moore, under the government's theory, she receives nothing. She doesn't receive the annuity that she had paid money into during her entire federal career, and she doesn't receive any salary because under the settlement agreement... Here's the problem. If I understand the government's argument, it is that the settlement agreement would be contrary to law, and therefore OPM doesn't have to accept it. And I understand your response to me, no, it's not contrary to law, because the statute says this can still be done if she's in non-pay status. There's two parts to the statute. You step down to a non-pay status, and the government seemed to have overlooked that part, is your argument, as I understand it. That this is a lawful settlement, it's not contrary to law, because it can be done given that she was in non-pay status. Well, that's only the first part of my argument. The second part of my argument is until Parker, OPM cannot interfere with the settlement entered into and under the statutory authority of the agencies to settle their cases, including the post office, and under the Merit Citizens Protection Board authority. And in both instances... It's hard for me to imagine OPM ought to be bound by a settlement that's contrary to law prior to Parker. Especially in view of Richmond. I'm sorry? Especially, I think, in view of Richmond. Well, if there is a statute saying you cannot pay somebody, then, in fact, if there's a clear statutory bar, then I would agree with you. But that's as far as I would go. There was not a clear statutory bar here. There is clear statutory authority to settle a case. You're kind of mushing two issues together, and I don't think you have to. The Parker issue is one way in which you think that you should win. You think OPM, even if we were to decide OPM shouldn't be bound by settlement agreement, that's only post-Parker. That's one way in which you would win, because this is pre-Parker. As long as it's not retroactive. But the other way in which you would win, it seems to me, is just by saying, even under Parker, this one is not contrary to law, because she was in non-pay status. Is that right? Is that the other way in which you were arguing the case? Well, by non-pay status, there's a disjunctive statutory provision, which, in essence, means what you just said. She was in non-pay status, and she was entitled to it. So your answer to Judge Moore's question is that that's the argument you're making. That's right. In other words, in my papers, I try to distinguish Parker from this case in any event. Right. It's a twofold attempt. But the one other question I have for you is I assume the government's going to say, you can say she was in non-pay status, and she may well have actually not been receiving pay, but the IRR says last day in pay status, 2-2801. So what's to be done about that? Because while we may all agree she didn't receive any pay, technically the IRR says something different. It indicates her to be in pay status. But her settlement agreement didn't say that. That's why I was hesitating when you used the phrase in pay status, because, in fact, the settlement agreement said she would not receive anything. And so the fact that there was a clerical error made, and she played no part in the creation of the IRR, the fact that there was a clerical error made or it wasn't executed properly does not detract from the fact that it just isn't true. Well, she did not receive any pay during that time period. She received her portion of the annuity from 99 through 2001. But that was before the IRR was created. Right. If I'm doing the right initials. Yes. Okay. That was before the IRR. The IRR was created afterwards. It was created after she left the second time, theoretically. But she was not on pay status actually receiving pay until 2001. From 99 to 2001, as I understand it, she was receiving an annuity, her portion of the annuity. Well, her annuity continued. Indeed, it continued beyond the February 2001 date. It continued until she died, and it continued until the government said to Mr. Cartlidge, you're now entitled to survivorship annuity, but by the way, we're taking away the lump sum because... But when did the annuity start making payments to her? 1999. It never stopped. So the annuity was making payments. She was receiving annuity payments as of 1999. That's correct. She was not receiving a salary. That's correct. Even though there's some indication she was on pay status until 2001. Well, that line item or clerical note was made after February 2001, where theoretically it said she was no longer there. Well, I presume that she was recognized as being in that pay status so that she could change the survivor benefit. That's correct. It was an artifact. Otherwise, she couldn't have changed it. That's correct. But what about the Raoni, Raon, I don't know how to pronounce it, even though it's one of our cases, problem? We have some precedent. Well, it's non-precedential, but the board certainly has precedent. We have non-precedential cases that indicate that a clerical error in the IRR has to be corrected by going straight to the agency, and that OPM, on the other hand, is sort of bound by what the IRR says, that this is the document that we look to. In fact, there's a regulation that says that for all of these issues. And this document you're suggesting has a clerical error in it. How do we handle that? I realize we don't actually have binding precedent on this point. We have a non-precedential case. I think we may even have two of them. But we don't have binding precedent on this point. Nonetheless, two of our predecessor panels, one of which I was on, indicated that the clerical error has to be fixed by the employee by going to the agency, rather than trying to get OPM to ignore it in the IRR. Well, the first thing I'd say is, and this is sort of cheating, but the first thing I'd say is that issue wasn't raised below. And therefore, it's not properly before this court. But let me answer what you're saying substantively. This change was made, and we don't know when it was actually made, but this change was made without authority from the settlement agreement. The settlement agreement is a guiding principle. And when it became known, and in fact, it wasn't known until the government pointed it out, she was dead. And the final point I would say is that sometimes these are the quandaries that you get into because of government regulations and how things are done. And so this takes us to the waiver argument. Because Congress said, look, if through the machinations of government, you find yourself in this sort of quandary, and it just isn't. You've used up most of your time. Did you want to save some for rebuttal? I do. And what we'll do, Mr. Schwartz, we'll give you your full rebuttal because you had a number of questions from the panel. So we'll restore your full rebuttal. Thank you very much, Judge. And I'll finish your answer. And we'll hear from the government. Mr. Solomson? Good morning, Your Honor. Have I pronounced it correctly? Yes, Your Honor. Let me ask you right off the bat here. Is the government contending that during the period from 1999 through 2001 that Mrs. Cartlidge was receiving salary? No, Your Honor. So the government agrees that she received no pay. No pay? Yeah, no pay. I mean salary is distinct from the annuity she was getting. Well, there's another element. And it's something that I think Petitioner is mistaken about in his reply. And one of the things Petitioner says in his reply is that Mrs. Cartlidge received no salary or benefits during that time period. Well, we're just talking about salary. She received, it's true, in other words, the government, as a matter of fact, agrees that during the 1999-2000 period she received no pay. 2001 period. I don't believe there's anything in the record to contradict that except for the IRR. And you're not using the IRR to contend that, in fact, she did get pay? No. Okay. So we can basically look at the IRR and see, in fact, that it incorporates the settlement agreement, does refer to the settlement agreement. Correct. So you're not saying the IRR stands in the way of saying she got no pay? Well, I... No salary. No salary, but I don't think that is necessarily the end of the question. But there was no, she didn't receive any salary during this period. Correct. The only money she was getting from the government was the annuity. No, that's why, Your Honor, that's why I referred to the benefits issue. Because part of what the settlement agreement also provided, and it is at the final sentence in paragraph one of the settlement agreement at appendix 31 and 32, provides that the non-pay status will not affect Ms. Cartlidge's continuing health insurance or her life insurance status. And we are not sure because of the brevity of the IRR record, but we believe that the reason why it says that she was in pay status was because if you were in non-pay status for more than a year, you cannot get the health and life insurance benefits. So she would have had to have been paying for those if she was truly in... Do you know, did you know what she was getting? We do not know whether she, how the health insurance or life insurance calculation actually worked. But there's no evidence that she was paying anything to the government during that time. In other words, the overpayment... Paying anything for what purpose? For the health and life insurance? Correct. So the settlement agreement provides that during this... What happens is when they... So if you're not sure, where is it part of the record that she was paying or not paying? Was she paying something? For health insurance and life insurance? We do not believe so. And that is based on... Well, where is that in the record? Beliefs are not very good unless you've got the evidence to support it. Where is it in the record showing that particular issue that she did not pay or did pay? Our answer would be that it is included in the calculation of the overpayment. The settlement agreement makes this calculation that she'll have to refund $269 per month. And there's no contention... But was that $269 a month refund as an offset for the particular survivor annuity cost? Because that was a reduction for her survivor annuity benefit. And her election of the new alternative form in lump sum in 2001. Right. But all we're saying is that the settlement agreement did not require her to refund additional money for the continuance of her life insurance and health insurance for the two-plus years that she was on this non-pays debt. But does the claim say that it's... I'm sorry, does the OPM request for overpayment or request for reimbursement, I should say, does that reflect that it's talking about insurance? No, it doesn't. And to that extent, the OPM arguably erred in Ms. Cartlidge's favor on that note. Do you know if it does or doesn't? The OPM calculations were only based on the overpayment of the annuity received between 1999 and 2001.  I guess I'm a little confused because I'm getting the sense that you're saying it might be the case that she also got benefits. Right? Is that what you're saying? You don't know that she got some additional benefits. You haven't offered any evidentiary proof. There's nothing in the record that shows that she was receiving something during these two years. You're saying that she might have. Well, there's a reason why the settlement agreement provides that she is to continue receiving or that the settlement or that the non-pay status shall not affect her health and life insurance benefits because I assume otherwise. Normally, the way this would work is a person gets reinstated retroactively and there's a back pay allotment and then there are deductions made for the health insurance and life insurance. You want to establish that she was receiving something during these two years so that you can therefore say that the settlement agreement was unlawful and that gives the right to OPM to reject it. At least that's what I understand your argument to be. But yet you're saying she might have been receiving something and I see no proof and I want you to point me to a page in the appendix that demonstrates that she in fact did or any evidence at all that you have that was before the record showing that she did because she says she didn't receive anything. We cannot. Only that line in the settlement agreement. My next question is even if that line in the settlement agreement and I were to interpret it as somehow she was continuing to get benefits, the OPM regulation which I have in front of me actually says doesn't it, let's see, pay ceases. Pay ceases. Pay. Pay. Is pay defined as including benefits? No, and that's an excellent point because it goes to our second reason why the agreement is unlawful. I guess I'm sorry, maybe I understood this all to be related. These are two discrete arguments because if these are two discrete arguments I really don't understand the first one at all. The pay ceases is when an annuity may begin but normally the way that works is that you go on a non-pay status as a regular employee and then at a later date you make a retirement election and that retirement election then is retroactive to the date your pay ceases. And the government's position is that the agency and the petitioner cannot use that part of the statute retroactively and the support for that contention is found at 5 CFR section 837.803 and that section, Your Honor, is one that petitioner in his brief admits is, quote, problematic and merely asserts is somehow inapplicable. But that regulation covers the cancellation of retirements by a judicial or administrative authority and includes settlement agreements between a retiree and an employing agency. And at 5 CFR 837.803c2 provides that, quote, if there is no back pay or the back pay is insufficient to recover the entire payment the employee may request that OPM waive the uncollected... Which regulation are you looking at? It's 5 CFR section 837.803c2. But what are you saying was the... What I'm trying to understand, Mr. Solomson, what are you saying... What is the government saying is the overpayment here? I mean, she didn't... Why is it just enough what was being taken out to reflect the difference between survivor annuity, no survivor annuity? I mean, there was no pay here during this period. So what's the overpayment? The overpayment is that in 1999 she was ineligible for the new alternative form annuity that she elected in 2001 because the alternative form annuity requires that you be terminally ill at the time of the election. And so what this effectively did was retroactively gave her an alternative form of annuity beginning in 1999 when she was ineligible for that. And moreover, had already made an irrevocable decision not to provide a survivorship benefit. No, I understand that. But where's the overpayment? Where's she getting... During 1999 through 2001, we all agree, she wasn't getting any pay. The overpayment is that she simply retroactively, when OPM or when the USPS allowed her to pick a new retirement date and make a new election, that voided the first retirement date and makes the retirement annuity that was received based on the first retirement void. And that was this course holding in Gravis. Now, I am honest enough to say that it didn't cover the particular part of the statute that Petitioner is relying on about pay ceasing. But that's our contention, is that the pay ceasing is merely the normal way, a normal progression of retirement. But it's not meant to cover these types of cases where effectively you can game the system by... Yeah, but the whole... How's a system being gamed if she does not get any pay? She gets an annuity during that time period, and you're saying, she not only does not receive her pay during that time period because she was retired, but now we're going to go back and recover all of the annuities that were paid to her. How does that make any sense in the process of gaming the system? Who's gaming the system? Is it OPM that's gaming the system, or is it the annuitant who's gaming the system? I... Well, Your Honor, we don't think that OPM is gaming the system. You're asking for no salary to be paid during that time period, and you're saying that any annuity payments which have been made, even though they've been offset, for the cost of the survivor benefit should all be recovered. So during that time period, the person gets nothing, absolutely zero. Is that what you're saying? Yes, Your Honor, but that is blunted. That criticism would be blunted by the fact that the result of the settlement agreement allowed her to select the new annuity beginning in 2001 with survivorship benefits, and that is something that she had previously foregone. Yeah, but now the survivorship benefits are significantly diminished because of the money that's been taken out. I mean, the... I guess the problem is where... I mean, you look at the... It seems, Mr. Solomson, that the cases suggest that what the right to come back in on the part of OPM is directed at is to recover an unjust overpayment, and there's no question about that, that OPM should be able to recover where there is an overpayment that's contrary to statute or regulation or both. But I don't... I'm having a problem seeing, and I can only speak for myself, where there was an improper overpayment here that hasn't already been compensated for in the settlement agreement. But what money went into Mrs. Cartlidge's hands that shouldn't have gone there? Well, overpayment doesn't mean windfall. I don't believe that those terms are synonymous, and indeed, Gravis recognizes that. The first thing Gravis says is, A, the petitioner in that case was simply not entitled to the money by law, and moreover in that case, because he had also received some sort of salary, it would have been a windfall. But the finding of an overpayment is not conditioned upon the overpayment being a windfall, and that is the regulation that I cited earlier. Still, where's the overpayment here? Where has money gone to her that shouldn't have gone? It wasn't in salary, so where was it? Because our contention is that it is unlawful to permit the retroactive annuity from the date of 1999, when by law she was not entitled to an annuity, an alternative form, and she could not have selected that annuity in 1999. But where was money going to her? But that would be the result of the settlement agreement, is that from 1999 to 2001, she will have received an alternative form of annuity for that two years under the settlement agreement. If petitioner wins, she gets to effectively have an alternative form of annuity from 1999 to 2001 that she could not have elected in 1999. Which was less than what she could have received without an election. Is that correct? Because during that time period, there was an offset for the survivor benefit. So she was receiving less during that time period than she otherwise would have received. I'm not sure I understand. Well, let's assume for the moment, hypothetically, if when she retired, her annuity was $1,000 a month. And during the time period that she was receiving that, then she decided to have less of the annuity because of the survivor benefit, which let's assume was $200 a month. So she would have had to go back and pay the $200 a month in order to vest the survivor benefit to her husband. And she only received $800 a month. So she was receiving a reduced amount during that time period. Is that correct? I don't believe so. She did not elect the survivorship annuity in 1999. She elected the larger form with no survivorship benefits. But it was retroactive, wasn't it? It had to be retroactive in order to vest. I'm not sure if Your Honor is talking about her new election in 2001 or what actually happened before the settlement. The new election in 2001 was retroactive to 1999. Correct. In order to make it vest. Otherwise it would not have vested. I don't understand that to be the case. I'm not quite sure about the vesting argument. I mean, I believe the reason why it went retroactive to 1999 had nothing to do with vesting, but just that was the settlement that petitioners sought and that the agency had agreed to. There was no vesting issue at that point? I do not believe so. Don't the regulations require that you have to have a vesting within a certain period of time? Otherwise a survivor benefit is not a vested unless it's fully paid up? I don't know, Your Honor. I'll be honest. I do not know. I think you should take a look at that because I think that's part of the problem. The issue also becomes one in which a vesting requirement is made by the regulations. And if, in fact, the vesting requirement is not met, then the survivor cannot receive any of the benefits unless there's a particular period of time in which the survivor benefit requirement was in play. Just like the issue regarding the payments of life insurance and benefits, the record is very unclear as to whether or not she did receive any of the benefits. And I'm sorry to say that the record was not very properly made by the government in this regard to support your claim. But the other problem is that if petitioner is correct, I don't know what petitioner would do with that 5 CFR 837.803. Where did you raise that? It is raised, I believe... Tell me where this argument is in your brief. It's cited. It's not made explicitly. I don't see this argument made, and I didn't see it made below either. So that's why I'm... What about the argument about insurance law? It is not there, Your Honor. This is in response to the petitioner's reply. There are some... I mean, the contention about pay ceasing... No, this is not in response to the petitioner's reply. It's a whole new argument that you're creating here on the fly, which I give you credit for your creativity, and it might actually even be a winner if it had been properly raised at some point during these proceedings. He didn't say anything in his reply that is surprising or new or different from what had gone on below and what has been argued throughout this case. But the pay ceasing argument in particular, I believe, was new. That is what makes the agreement not unlawful. I mean, the opening brief assumes that if Parker applies, we're on to overpayment waiver. And so in the reply brief, the response is it's not unlawful because of the annuity commencement provision that the petitioner relies on relating to pay cease. And our response to that is that that would conflict with... That view of the statute conflicts with the holding in Grabis and also conflicts with the regulation we cited. I just have one more quick question. On page 21, the government makes an argument that I either don't understand or it just strikes me as very strange. And it says, because the settlement agreement says $269 a month for a concrete number of months, because the settlement agreement says approximately $269 a month, the government then says, thereby placing the cartlidges on notice, OPM, could deduct any overpayment. So the settlement agreement accounts for exactly $7,000 approximately, $7,263. And is this really the government's attempt to say $72,370 is approximately $7,000 and because they said approximately $269 a month, that she should have somehow been on notice that the government was going to collect $70 or try to demand $72,000 from her? No, Your Honor. I think the only point we were trying to make was that to the extent the settlement agreement provides that the alternative form annuity in lump sum would be subject to OPM's approval. If the court viewed... that that was just simply inherently irreconcilable with the approximate calculation of the overpayment or from the point of view that perhaps it wasn't necessarily inextricably irreconcilable that those two provisions could be harmonized in that way. You're not trying to get me to say $72,000 is approximately $7,000. No. Thank you, Mr. Solson. I think you had an extra five minutes, so that sort of balances out with what Mr. Schwartz will have for his rebuttal. Mr. Schwartz, again, you have your full five minutes rebuttal. Thank you very much, Your Honor. I shall make the time about equal. I'll try not to use them all. Mr. Schwartz, how much was actually offset by OPM right now? They took $50,000, $53,000, $54,000 from our lump sum payment. And I suspect by now, because they've been deducting it each month, they probably have it all. So they have it all back. They have it all back. Your action is to recover what has already been offset. That's correct, Your Honor. The critical flaw in the government's argument or in their rationale is that it requires that the election of the new annuity was against statute. And the OPM didn't say that. In fact, they could have. They could have said, no, we will not recognize a survivorship annuity. That is in violation of statute. But they didn't say that, because that was consistent with the settlement agreement, and they accepted the settlement agreement. Only because the election was retroactive. Well, that's correct. But under the government's theory, and they still go back and forth on this, but under the government's theory, that was in violation of statute. And that's why, after Parker, they had a right to deal with this issue and just not accept this whole entire settlement agreement. In terms of the health insurance, when you retire on an annuity, if you continue the government health insurance, then it gets deducted. And if you go with your spouse's health insurance then it doesn't get deducted. So the health benefits really aren't involved in this case at all, as I understand it. Finally, in terms of the regulation, although the government did not make this argument, here or below, the Back Pay Act was what that regulation was responding to. And if, in fact, they get stuck, then they always have the waiver. And I won't go through the waiver. I made that argument twice. I think I probably made it enough, if not more than enough. And it's in my papers. But the waiver clearly should have been applied. You're saying that the regulation 837.803C suggests the back pay because it says in the last clause, recovered from the back pay adjustment. Well, it deals with circumstances for which there is a restoration of duty under the Back Pay Act. And it also requires, although it doesn't say it specifically, well, no, that's not correct. I was going to say it requires the payment of the salary. It doesn't quite say that. But the circumstances, as I point out, where that would apply are so minimalist to have no effect. Thank you very much, Your Honors. Thank you, Mr. Schwartz. Mr. Solomson, thank you again. The case is submitted.